ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| LUIS HIRAM QUIÑONES SANTIAGO<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurrido | KLRA202400568 | *Revisión Judicial* procedente de la División de Remedios Administrativos del Departamento de Corrección y Rehabilitación<br><br>Caso Núm.: GMA1000-230-24<br><br>Sobre: Solicitud de Remedio Administrativo |

Panel integrado por su presidenta, la Jueza Brignoni Mártir, la Jueza Álvarez Esnard y la Jueza Prats Palerm.

*Prats Palerm, Jueza Ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 16 de diciembre de 2024.

Comparece Luis Hiram Quiñones Santiago ("Recurrente" o "señor Quiñones Santiago"), por derecho propio y en *forma pauperis*, mediante solicitud de revisión administrativa, solicita la revisión de una *Respuesta del Área Concernida/Superintendente*, emitida el 14 de agosto de 2024 y notificada el 30 de agosto de 2024, por la División de Remedios Administrativos del Departamento de Corrección y Rehabilitación ("DCR"). Mediante el referido dictamen, el DCR denegó una *Solicitud de Remedio Administrativo* instada por el Recurrente, para que se le proveyera un cubo con exprimidor.

Por los fundamentos que expondremos a continuación, se *Confirma* el dictamen recurrido.

**I.**

El 18 de junio de 2024, el señor Quiñones Santiago presentó una *Solicitud de Remedio Administrativo* ante el DCR, en la cual solicitó, como necesidad y cuestión de higiene, que se le supliera un exprimidor de mapo.

El 14 de agosto de 2024, el DCR decretó la *Respuesta del Área Concernida/Superintendente*, notificada el 30 de agosto de 2024. Mediante

la referida determinación, la agencia recurrida expresó que, *"[e]l equipo de limpieza para el mantenimiento en el módulo, incluyendo los detergentes que se le proveen[,] están ubicados en los módulos"*.[1]

Inconforme, el 12 de septiembre de 2024, el señor Quiñones Santiago presentó una *Solicitud de Reconsideración*. El Recurrente alegó que, contrario a lo contestado por el DCR, el módulo no contaba con un cubo con exprimidor. Asimismo, sostuvo que, exprimir el mapo con las manos ponía en riesgo la salud de los confinados, toda vez que estaban siendo expuestos a enfermedades. Señaló, además, que, el *Manual sobre el Plan de Mantenimiento y Salud Ambiental* categoriza a los cubos con exprimidores como "*Equipo y Suministros de Limpieza e Higiene (Mínimos)*".

El 26 de septiembre de 2024, el DCR dictaminó una *Respuesta de Reconsideración al Miembro de la Población Correccional*. Mediante el referido dictamen, el foro adjudicador expresó lo siguiente:

> Luego de evaluar la Solicitud de Reconsideración[,] se determinó la modificación de la contestación del área de Superintendencia.
>
> Sr. Quiñones Santiago, en su solicitud de Remedio expresó su interés en que se supla un exprimidor para el mapo en el área de vivienda. Este asunto fue discutido en el área de Superintendencia. Nos informaron que la vivienda contaba con exprimidor. Recientemente[,] se suscitaron unos episodios de violencia física. El mismo fue removido del área como medida cautelar.[2]

Insatisfecho aún, el 11 de octubre de 2024, el señor Quiñones Santiago acudió ante esta Curia mediante recurso de revisión administrativa. En síntesis, el Recurrente expuso que, el DCR debe implementar alternativas y suplirle un exprimidor, en lugar de removerlo del módulo de vivienda, ya que se debe tomar en consideración la limpieza del lugar y la salud de los confinados.

Posteriormente, el 13 de noviembre de 2024, el señor Quiñones Santiago presentó una *Solicitud y Declaración para que se Exima de Pago de*

---

[1] Véase, Apéndice de la parte recurrente, a la pág. 2.
[2] Véase, Apéndice de la parte recurrente, a la pág. 4.

*Arancel por Razón de Indigencia*. El 15 de noviembre de 2024, autorizamos al Recurrente a litigar *in forma pauperis*.

Por otra parte, el 22 de noviembre de 2024, el DCR presentó su alegato en oposición. Perfeccionado el recurso y contando con la comparecencia de las partes, procedemos a resolver.

**II.**

**-A-**

La Sección 4.1 de la Ley Núm. 38-2017, Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico ("LPAU"), 3 LPRA sec. 9671, dispone que las decisiones administrativas pueden ser revisadas por el Tribunal de Apelaciones. La finalidad de esta disposición es delimitar la discreción de los organismos administrativos para asegurar que estos ejerzan sus funciones conforme a la ley y de forma razonable. *Hernández Feliciano v. Mun. Quebradillas,* 211 DPR 96, 113-114 (2023). Es norma reiterada que, al revisar las determinaciones de los organismos administrativos, los tribunales apelativos le conceden gran consideración y deferencia, por la experiencia y el conocimiento especializado que estos poseen. *Íd.*

Por su parte, la Sección 4.5 de la LPAU, 3 LPRA sec. 9675, establece que los tribunales deben sostener las determinaciones de hechos de las agencias si están basadas en "*evidencia sustancial que obra en el expediente administrativo*". Como vemos, la norma anterior nunca ha pretendido ser absoluta. Por eso, el Tribunal Supremo ha resuelto con igual firmeza que, los tribunales no podemos imprimirle un sello de corrección, so pretexto de deferencia, a las determinaciones o interpretaciones administrativas irrazonables, ilegales, o simplemente contrarias a derecho. *Super Asphalt v. AFI y otro*, 206 DPR 803 (2021); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117 (2019).

Por otro lado, la citada Sección 4.5 de la LPAU, *supra*, dispone que "*[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal*". Aun así, se sustituirá el criterio de la agencia cuando no se pueda

hallar fundamento racional que explique o justifique el dictamen administrativo. *Rolón Martínez v. Superintendente,* 201 DPR 26 (2018). Por ende, "*los tribunales deben darle peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra*". *Íd.* Lo anterior responde a la vasta experiencia y al conocimiento especializado que tienen las agencias sobre los asuntos que le son encomendados. *Capó Cruz v. Junta de Planificación,* 204 DPR 581 (2020).

Por consiguiente, dada la presunción de corrección y regularidad que reviste a las determinaciones de hecho elaboradas por las agencias administrativas, éstas deben ser respetadas mientras la parte que las impugna no produzca evidencia suficiente para derrotarlas. *Graciani Rodríguez v. Garaje Isla Verde, supra.* Al revisar las decisiones de las agencias, el criterio rector que debe guiar a los tribunales es la razonabilidad de la actuación, aunque esta no tiene que ser la única o la más razonable. *Hernández Feliciano v. Mun. Quebradillas, supra.*

Por lo tanto, si al momento de examinar un dictamen administrativo se determina que: (1) la decisión administrativa no está basada en evidencia sustancial; (2) la agencia erró en la aplicación de la ley; (3) el organismo administrativo actuó de manera irrazonable, arbitraria o ilegalmente; o (4) su actuación lesiona derechos constitucionales fundamentales, entonces la deferencia hacia los procedimientos administrativos cede. *Íd.*

Acorde con lo antes expuesto, la revisión judicial de los dictámenes administrativos está limitada a determinar si hay evidencia sustancial en el expediente para sostener la conclusión de la agencia o si esta actuó de forma arbitraria, caprichosa o ilegal. *Íd.* Por tanto, si una parte afectada por un dictamen administrativo impugna las determinaciones de hecho, esta tiene la obligación de derrotar, con suficiente evidencia, que la decisión del ente administrativo no está justificada por una evaluación justa del peso de la prueba que tuvo ante su consideración. *Capó Cruz v. Junta de Planificación, supra; Rebollo v. Yiyi Motors,* 161 DPR 69, 77 (2004). De no identificarse y demostrarse esa otra prueba en el expediente administrativo, las

determinaciones de hechos deben sostenerse por el tribunal revisor, pues el recurrente no ha logrado rebatir la presunción de corrección o legalidad. *O.E.G. v. Rodríguez,* 159 DPR 98, 118 (2003).

**-B-**

El Plan de Reorganización Núm. 2 de 21 de noviembre de 2011, según enmendado, conocido como "*Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011*" ("Plan Núm. 2-2011"), le confirió al DCR la facultad de implantar la política pública relacionada con el sistema correccional y de rehabilitación. 3 LPRA, Ap. XVIII, Art. 4. Como corolario, el Art. 7 (aa) del Plan Núm. 2-2011, 3 LPRA, Ap. XVIIII, Art. 7, le confiere al DCR la discreción para:

> [A]doptar, establecer, desarrollar, enmendar, derogar e implementar reglas, reglamentos, órdenes, manuales, normas y procedimientos para el funcionamiento efectivo del Departamento y de los organismos bajo su jurisdicción, **a los fines de regir la seguridad, la disciplina interna y la conducta** de funcionarios, empleados y de la clientela, así como los programas y servicios.

> (Énfasis suplido)

En el ejercicio de su facultad reglamentadora, el DCR adoptó el Reglamento 8583, *Reglamento para Atender las Solicitudes de Remedios Administrativos Radicados por los Miembros de la Población Correccional* del 4 de mayo de 2015. Tal Reglamento, *supra,* creó la División de Remedios Administrativos para atender "*cualquier queja o agravia que pudieran tener los confinados*". A su vez, el referido Reglamento estableció el procedimiento a seguir ante la presentación de una solicitud de remedio administrativo.

**-C-**

El *Manual sobre el Plan de Mantenimiento y Salud Ambiental*, Manual Núm. AC-FAC-2008-04 del 22 de agosto de 2008, tiene como propósito "*establecer procedimientos para cumplir con las normas de salud ambiental aplicables y proveer instrucciones generales relacionadas con la higiene, limpieza y mantenimiento en las instituciones correccionales*".

Atinente al asunto ante nuestra consideración, el Artículo X del Manual establece un plan de mantenimiento diario para "*[m]antener la*

*limpieza y el control de bacterias y otros malos olores*". A su vez, el inciso B (2) del referido Artículo contiene una lista de "*Equipo y Suministros de Limpieza e Higiene (Mínimos)*", la cual incluye cubos con exprimidores, entre otros.

Por otra parte, el Artículo VIII, inciso G, implanta a un Oficial de Higiene Institucional ("OHI"), quien deberá asegurar el cumplimiento de todos los aspectos de salud ambiental establecidos en el Manual. Asimismo, el OHI vendrá obligado a fiscalizar "*la disponibilidad de los suministros de limpieza adecuados*".

**III.**

El Recurrente aduce que, el DCR incidió al no proveerle un exprimidor de mapo, a pesar de que el *Manual sobre el Plan de Mantenimiento y Salud Ambiental, supra*, identifica a los cubos con exprimidores bajo la categoría de "*Equipo y Suministros de Limpieza e Higiene (Mínimos)*". Además, sostiene que, ante los episodios de violencia dentro del módulo de vivienda, el DCR debía buscar alternativas distintas a los cubos de metal previamente disponibles y no dejar a los confinados desprovistos de un exprimidor de mapo.

Por otra parte, el DCR arguye que, el *Manual sobre el Plan de Mantenimiento y Salud Ambiental* instituye a un Oficial de Higiene Institucional, a quien le corresponde atender el asunto presentado por el Recurrente. Asimismo, puntualiza que, la determinación de remover el exprimidor por motivos de seguridad goza de amplia deferencia, toda vez que fue tomada en aras de preservar la seguridad institucional.

Conforme al ordenamiento antes expuesto, resulta evidente que las determinaciones administrativas gozan de deferencia y de una presunción de corrección que debe ser rebatida por quien las impugna. Por esta razón, nuestra intervención se limita a evaluar si la determinación fue ilegal, irrazonable o arbitraria. En el caso de autos, el Recurrente no evidenció la ocurrencia de estas circunstancias.

Según se desprende del recurso ante nos, luego de ciertos episodios violentos, el cubo con exprimidor fue removido del módulo del Recurrente, con la intención de salvaguardar la seguridad institucional. Al amparo de su facultad discrecional y en búsqueda de proteger la seguridad institucional, el DCR tomó la determinación de minimizar el riego de actos violentos futuros al remover objetos que pudieran ocasionar daños físicos. Ante la ausencia de prueba que demuestre que el foro administrativo actuó de manera ilegal, irrazonable o arbitraria, no intervendremos con su determinación.

No obstante, reconocemos la importancia de salvaguardar la salud de toda población, incluyendo a la correccional. Por lo tanto, le exhortamos al DCR y al OHI a auscultar alternativas viables para proveerles a los confinados todos los artículos de higiene mínimos, conforme dispone el *Manual sobre el Plan de Mantenimiento y Salud Ambiental.*

**IV.**

Por los fundamentos que anteceden, se *Confirma* el dictamen recurrido.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones